IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RACHEL ROBERTSON,**

  **Plaintiff,**

               Case No. 2:23-cv-2334

  vs.             Judge Sarah D. Morrison

               Magistrate Judge Elizabeth P. Deavers

**MCKESSON CORPORATION,**
*et al.*,

  **Defendants.**

## INITIAL SCREEN REPORT AND RECOMMENDATION AND ORDER

Plaintiff, Rachel Robertson, has filed an action alleging violations of her civil rights under Title VII, the First Amendment, and the Ohio Constitution. Plaintiff is proceeding in this action without counsel and has been granted leave to proceed *in forma pauperis.* (ECF No. 2.) The matter is currently before the undersigned Magistrate Judge to conduct the initial screen required by law to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2). Having completed the initial screen, the Undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's claims in their entirety for failure to state a claim on which relief may be granted.

**I.**

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are

assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[1] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
> \* \* \*
>
> (B) the action or appeal--
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

---

[1] Formerly 28 U.S.C. § 1915(d).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## II.

Plaintiff's "Complaint for Employment Discrimination" names as Defendants McKesson Corporation ("McKesson") and McKesson employees Jennifer Church, Jeff Starner, and Anna Greene. Plaintiff also names as a Defendant Carol Scott, identified as an Investigator with the Ohio Civil Rights Commission. Plaintiff alleges the following. Plaintiff was employed by

3

McKesson in September 2021 when McKesson issued its first policy on COVID-19 vaccinations. The policy allegedly prohibited the hiring, transfer or promotion of unvaccinated workers. Plaintiff requested a religious accommodation by the established deadline of October 11, 2021. When Plaintiff had not received a response to her accommodation request by November 14, 2021, she emailed Jennifer Church from McKesson's human resources department requesting a response. Although Ms. Church confirmed an answer would be forthcoming on November 15, 2021, Plaintiff did not receive an answer. According to the Complaint, the policy "prevent[ed] Plaintiff from receiving any promotion in her department or to be transferred as requested to Brian Ginnane to the McKesson Warehouse located in Washington Courthouse." (ECF No. 1-1 at 7.)

On March 8, 2022, McKesson announced a mask policy that required unvaccinated employees to wear masks. Vaccinated employees were exempt from the mask requirement. Plaintiff refused to wear a mask "stating that segregating between the vaccinated and unvaccinated employees was equivalent to the marking of the Jews with the star of David during the Holocaust." (ECF No. 1-1 at 8.) On March 9, 2022,[2] Plaintiff refused a request by her supervisor that Plaintiff wear a mask, claiming that "she 'cannot disobey God'" and explaining that it was against her faith to wear a mask. (*Id*.) The following day, Jeff Starner, the department manager, advised Plaintiff that she would have to wear the mask or be sent home. Plaintiff chose to be sent home. While at home, Plaintiff "prayed to her God (JAH) and He directed here to return to work, put the mask back on and request an accommodation for the mask from Human resources Department." (*Id*.) Plaintiff sent her accommodation request relating to the mask policy on March 23, 2022.

---

[2] The form Complaint notes the date as March 9, 2021, but given the context, the Court considered the date to be a typo.

Over the following three months, Plaintiff watched unvaccinated employees remove their masks while she was "forced" to wear hers. (ECF No. 1-1 at 8.) On April 4, 2022, Plaintiff emailed Anna Green in McKesson's human resources department to ask when Plaintiff would receive a response to the accommodation request. Plaintiff received a return email stating that no timeline could be given.

Plaintiff filed a complaint with the Ohio Civil Rights Commission and was advised by Carol Scott, an investigator, that her complaint would be processed in line with others. Plaintiff attached to her Complaint, the Charge of Discrimination she filed with the Ohio Civil Rights Commission on June 9, 2022. (ECF No. 1-1 at 18.) In that Charge, she identifies her religion as Baptist Christian, and further states:

> I began my employment with the Respondent on or about November 16, 2020. My current position is Material Handler. On or about March 8, 2022, I was notified by my employer that vaccinated employees are permitted to remove their face masks while unvaccinated employees had to continue wearing their masks. I sincerely hold a religious belief that conflicts with my employer's mask requirement. During my employment, I notified my employer of my religious belief and my need for an accommodation from the mask requirement. I requested a religious exemption to Respondent's COVID-19 mask mandate. I have not received a response from the Respondent to my accommodation request.
>
> I believe my employer failed to accommodate me and discriminated against me because of my religion, Baptist Christian, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*)

After "weeks went by with no response," Plaintiff contacted, and ultimately filed a charge of discrimination with, the U.S. Equal Employment Opportunity Commission ("EEOC"). On June 9, 2022, McKesson lifted the mask policy.

Plaintiff did not receive a response to either of her vaccination or mask policy accommodation requests. Although McKesson lifted its mask policy, its vaccination policy remained in effect. The vaccination policy prevented Plaintiff "from being promoted to Lead

5

position in her department (HAZMAT) and it prevented her from being transferred to the McKesson Warehouse in in Washington Courthouse." (ECF No. 1-1 at 9.)

Plaintiff's Complaint reflects her intention to assert a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e. Plaintiff checked the boxes on the Form Complaint indicating the discriminatory conduct of which she complains includes the failure to promote her, the failure to accommodate her disability, and "[d]isparate treatment/forced to wear face mask while other unvaccinated removed theirs." Further, Plaintiff checked the box indicating that she believes that she was discriminated against based on her religion. Plaintiff also indicated on the form Complaint her intention to bring other federal and state law claims, including a claim for a violation of her First Amendment rights under the Establishment Clause and a violation of her rights under the Ohio Constitution, Article 1, Section 1. Plaintiff's request for relief is not entirely clear, but it appears that Plaintiff seeks "punitive" damages in the amount of $69,000 and "exemplary" damages in the amount of $45,000. Although she characterizes her damages requests in these ways, she describes her requests in terms of compensatory damages for lost income and other monetary costs.

Plaintiff has attached to her Complaint her Notice of Right to Sue letter from the EEOC. (ECF No. 1-1 at 17.)

### III.

#### A. All Claims Other Than Plaintiff's Title VII Claims Directed to Defendant McKesson Corp.

Upon the Undersigned's review of the Complaint, certain claims can be disposed of at the outset with minimal discussion. For example, any claims for alleged violations of Plaintiff's religious freedoms under both the U.S. and Ohio constitutions are subject to dismissal. Plaintiff has named a private corporation and several individuals as defendants. "[O]nly defendants who

6

engage in state action may be liable for constitutional rights violations under the federal and Ohio Constitutions." *Butler v. Karet*, No. 21 CV 981, 2021 WL 3633476, at *1 (N.D. Ohio Aug. 17, 2021) (citing *Lindsey v. Detroit Entertainment, LLC*, 484 F.3d 824, 827 (6th Cir. 2007) (to prevail on a federal constitutional claim under 42 U.S.C. § 1983, "Plaintiffs must demonstrate that Defendant deprived them of their rights, privileges, or immunities secured by the Constitution under color of state law"); *Jordan v. Giant Eagle Supermarket*, 2020-Ohio-5622, ¶ 57, 2020 WL 7258579, at *11 (Ohio App. 8 Dist., 2020) (affirming dismissal of claims asserted under the Ohio Constitution against Giant Eagle and Giant Eagle employees on the basis these defendants are not "state or governmental actors or entities")). In short, "a private party may not be sued for constitutional rights violations 'no matter how discriminatory or wrongful' the party's conduct." *Id*. (quoting *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)).

      Plaintiff's constitutional claims remain subject to dismissal despite the following. Carol Scott appears to be an employee of a state agency. Nevertheless, Plaintiff does not allege any conduct undertaken by Ms. Scott that resulted in the deprivation of Plaintiff's constitutional rights. Indeed, Ms. Scott is only mentioned in the body of the Complaint as having advised Plaintiff that the complaint filed with the Ohio Civil Rights Commission "would be processed in line with the others." (ECF No. 1-1 at 9.) Plaintiff therefore fails to set forth a plausible constitutional claim against Ms. Scott. Further, Plaintiff describes McKesson as a federal government contractor supplying medical equipment. To be sure, under limited circumstances, private entities can be deemed government actors. Such circumstances include when a private company's function involves a traditionally exclusive government function, when a private company's conduct is "entwined with" government decisions or fairly attributable to the government based on a close "nexus" between the state and the challenged conduct, or when the

government compelled the company's action.  *Ciraci v. J.M. Smucker Co.,* 62 F.4th 278, 281 (6th Cir. 2023) (citations omitted).  Here, Plaintiff has not alleged facts demonstrating that McKesson's conduct, or the conduct of its employees is fairly attributable to the state as required to assert a claim under the federal and Constitutions.  Plaintiff's Complaint, read generously, at most suggests that McKesson was complying with federal law in connection with instituting its COVID-19 vaccination policy.  However, "[s]o long as a private company's actions turn on compliance with a state or federal law, that does not by itself make the company a state actor."  *Id.*  Accordingly, the Undersigned **RECOMMENDS** that Plaintiff's claims alleging constitutional violations be **DISMISSED.**

Similarly, Plaintiff's Title VII claims against the individual defendants are subject to dismissal.  "[I]t is well settled that Title VII prohibits suits against Defendants sued individually."  *Harrison v. Michigan Dep't of Health & Hum. Servs*., No. 22-CV-12034, 2023 WL 4237580, at *7 (E.D. Mich. June 28, 2023) (citing *Little v. BP Expl. & Oil Co.*, 265 F.3d 357, 362 (6th Cir. 2001) ("The law in this Circuit is clear that a supervisor who does not otherwise qualify as an employer cannot be held personally or individually liable under Title VII.") (citing *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997); *see also Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012)) ("An individual cannot be held personally liable for violations of Title VII.")).  Thus, "[w]hile an individual can be liable under Title VII in rare instances when he or she qualifies as an employer," in this case Plaintiff does not allege that any of the individual Defendants employed Plaintiff, only that she was an employee of McKesson.  Accordingly, the Undersigned **RECOMMENDS** that Plaintiff's Title VII claims against the identified individual defendants be **DISMISSED.**

### B.  Plaintiff's Title VII Claims Directed to McKesson Corp.

8

Turning to Plaintiff's Title VII claims directed to McKesson Corp., the starting point for the analysis is the precise nature of those claims. Plaintiffs appears to challenge both McKesson's vaccine policy and its mask policy. First, Plaintiff alleges that McKesson instituted a COVID-19 vaccination policy, she requested a religious accommodation relating to that policy, the policy prevented unvaccinated workers from being promoted or transferred, she was denied her express request made to "DC leader" Brian Ginnane to be transferred to the warehouse in Washington Court House, she was prevented from being promoted to Lead position in her department, and she did not receive a response to her accommodation request as it related to the vaccination policy. Further, Plaintiff alleges that, on March 8, 2022, McKesson instituted a mask policy requiring only unvaccinated workers to wear masks, the following day she was asked by her supervisor to wear her mask but Plaintiff stated that doing so was against her faith, the next day Plaintiff was told that she would have to wear her mask or be sent home, she chose to be sent home, at God's direction she returned to work the next day wearing her mask, she then requested a religious accommodation with respect to the mask policy, she never received a response to that accommodation request either, and, over the next three months while the mask policy was in effect before it was lifted on June 9, 2022, she observed other unvaccinated employees not wearing their masks while she was required to wear hers. Based on these allegations, Plaintiff claims religious discrimination arising from a failure to promote her, a failure to accommodate her disability'[3] and disparate treatment.

---

[3] As discussed more fully below, the Court construes Plaintiff's having checked this box on the form Complaint as indicating her intention to assert a religious accommodation claim. Later in the form Complaint, Plaintiff did not check the box to confirm that she is bringing a discrimination claim based on a disability. Moreover, a Title VII plaintiff cannot bring claims that were not part of the original EEOC charge in a new lawsuit. *Poweleit v. DeJoy*, No. 1:22-CV-194, 2023 WL 2743777, at *3 (S.D. Ohio Mar. 31, 2023) (citing 42 U.S.C. § 2000e–5(f)(1); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 (1974)). Nothing in Plaintiff's discrimination charge filed with the Ohio Civil Rights Commission suggests a claim for disability discrimination. Nor could any facts asserted in that charge be considered

Title VII prohibits employers from discharging or discriminating against any individual because of that individual's "race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2. The statute defines "religion" as

> all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j).

"'There are two basic types of religious discrimination claims that an individual may bring . . . under Title VII: disparate treatment claims and religious accommodation claims.'" *Haskins v. Bio Blood Components*, No. 1:22-CV-586, 2023 WL 2071483, at *2 (W.D. Mich. Feb. 17, 2023) (quoting *Reed v. Int'l Union*, No. 07-2505, 2009 WL 5943111, at *2 (6th Cir. May 7, 2009)). Plaintiff appears to be attempting to bring both types of claims here.

To establish a prima facie case of religious discrimination for her employer's failure to provide a reasonable accommodation, Plaintiff must show that "'(1) [s]he holds a sincere religious belief that conflicts with an employment requirement; (2) [s]he has informed the employer about the conflicts; and (3) [s]he was discharged or disciplined for failing to comply with the conflicting employment requirement.'" *Haskins,* 2023 WL 2071483, at *2 (quoting *Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015)).

A disparate impact religious discrimination claim requires different allegations, requiring Plaintiff to plead "(1) that [s]he was a member of a protected class, (2) that [s]he experienced an adverse employment action, (3) that [s]he was qualified for the position, and (4) that [s]he was

---

as a reason to cause the EEOC to investigate a disability claim. *Harrison,* 2023 WL 4237580, at *14. Similarly, Plaintiff does not assert that she suffers from any disability in the text of her Complaint.

10

replaced by a person outside of the protected class or that he was treated differently than similarly situated employees." *Savel v. MetroHealth Sys.,* No. 22-CV-2154, 2023 WL 4490395, at *7 (N.D. Ohio July 12, 2023). A failure to promote claim requires similar but more specific allegations relating to that specifically recognized adverse action, including that (1) plaintiff was a member of a protected class; (2) [s]he applied and was qualified for a promotion; (3) [s]he was considered for and denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied. *Bolden v. Lowes Home Centers, LLC*, 783 F. App'x 589, 594 (6th Cir. 2019) (citing *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005)). However, denial of a lateral transfer, "'which by definition results in no decrease in title, pay or benefits generally is not considered an adverse employment action for discrimination purposes.'" *Dunbar v. Evolent Health, Inc.*, No. 3:22-CV-304-CHB, 2023 WL 2336911, at *5 (W.D. Ky. Mar. 2, 2023) (quoting *Momah v. Dominguez*, 239 F.App'x 114, 123 (6th Cir. 2007)).

Plaintiff has not pled facts sufficient to meet any of the above standards. The Undersigned will take each purported claim in turn.

Taking Plaintiff's religious accommodation claim first, it appears directed to both policies and is subject to dismissal for several reasons. Most directly, Plaintiff has not pled the third prong of such a claim with respect to either of McKesson's COVID-19 related policies. That is, Plaintiff fails to allege that she was discharged or disciplined either for her failure to obtain a COVID-19 vaccine or her refusal to wear a mask. Although Plaintiff's *in forma pauperis* application appears to confirm that she no longer works at McKesson, nothing in Plaintiff's Complaint suggests how this came to be so. Her complaint is completely silent on this issue as to the vaccination policy. With respect to the mask policy, Plaintiff alleges at most that

11

she opted to be sent home rather than to wear a mask because wearing a mask was against her faith. This incident, however, occurred before Plaintiff formally requested an exemption from the mask requirement for religious reasons. Moreover, Plaintiff's conclusory allegations do not provide any factual basis from which the Undersigned could conclude that being sent home under this circumstance plausibly rises to the level of discipline necessary to support a religious accommodation claim. Even were the Undersigned to assume the most obvious potential ramification – some loss of pay - "'more than loss of pay is required to demonstrate discipline.'" *Smith v. Northstar Dining Chesterfield, LLC*, No. 12-14311, 2014 WL 4829591, at *9 (E.D. Mich. Sept. 29, 2014) (quoting *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007)).

Further, and more fundamentally with respect to McKesson's mask policy specifically, it is not clear that Plaintiff's Complaint could be construed fairly as having sufficiently pled the first prong of a religious accommodation claim. Although Plaintiff asserts that she held a sincere religious belief preventing her from wearing a mask, that allegation is undercut by her explanation that, after being sent home, God advised her to return to work and wear her mask - which she did.

Finally, none of Plaintiff's allegations can be read as suggesting any constructive discharge arising from Plaintiff's objection to either of McKesson's COVID-related policies. For example, Plaintiff does not allege that McKesson deliberately created intolerable working conditions, as perceived by a reasonable person. Nor does Plaintiff plead that McKesson created such conditions with the intention of forcing her to quit. And, as noted, it is not clear from Plaintiff's allegations that she quit as a result of these policies. *Equal Emp. Opportunity Comm'n v. Publix Super Markets, Inc.,* 481 F. Supp. 3d 684, 693 (M.D. Tenn. 2020). For all of

these reasons, the Undersigned **RECOMMENDS** that Plaintiff's religious accommodation claim be **DISMISSED**.

Plaintiff's purported disparate treatment claim, which appears directed to only McKesson's vaccination policy, is likewise subject to dismissal. First, as Plaintiff describes it, the policy limiting transfers or promotions applied only to "unvaccinated workers." Plaintiff does not allege that only employees claiming a religious exemption were ineligible for transfers or promotions under the vaccination policy. And there are other reasons, of course, that may cause a worker to choose to remain unvaccinated aside from any religious conviction. One example that quickly comes to mind is health concerns. Thus, as alleged here, any limitation on transfers or promotions was based on vaccination status, not religion. Significantly, "[v]accination status is not a class to which Title VII protections apply." *Savel*, 2023 WL 4490395, at *8.

Further, Plaintiff's allegations that she was denied a promotion, or a transfer, as a result of the vaccination policy are not particularly clear and, regardless, are wholly conclusory. For example, Plaintiff asserts that the vaccination policy prevented her from being promoted to a Lead position in her department.[4] She does not, however, allege that she applied and was qualified for a promotion to the Lead position or that she was considered for and denied the promotion. Moreover, even assuming Plaintiff would qualify as a member of a protected class for purposes of this claim, she does not plead that an individual of similar qualifications who was not a member of the protected class received the job at the time her request for the promotion was denied. *Bolden,* 783 F. App'x at 594. The absence of such allegations is fatal to Plaintiff's religious discrimination claim.

---

[4] From Plaintiff's filings it appears that, during the relevant time period, she was employed by McKesson as a Material Handler in the HAZMAT department. (ECF No. 1-1 at 9, 18.)

The same is true regarding Plaintiff's claimed denial of a transfer. Plaintiff alleges only that she requested to be transferred to a McKesson facility closer to her "property in Jackson Ohio." (ECF No. 1-1 at 9.) This statement is insufficient to suggest that the transfer Plaintiff requested could be construed as anything other than a lateral transfer. The denial of a lateral transfer, however, generally is not considered a materially adverse action sufficient to support a discrimination claim. *Dunbar,* 2023 WL 2336911, at *5. For all of these reasons, the Undersigned **RECOMMENDS** that Plaintiff's religious discrimination claim be **DISMISSED.**

Finally, the Undersigned notes that Plaintiff has filed a motion to obtain electronic case filing rights. (ECF No. 4.) In light of the recommendation that Plaintiff's Complaint be dismissed in its entirety, the motion is **DENIED.**

## IV.

For the reasons set forth above, it is **RECOMMENDED** that the Complaint be **DISMISSED** in its entirety for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff's motion to obtain electronic case filing rights (ECF No. 4) is **DENIED.**

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review of by the District Judge

and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

    **IT IS SO ORDERED.**

**DATED: August 11, 2023**    */s/ Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**